UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————— x

CHRIS SALLEY, PAULA PAGE TIERNEY, SUSAN FAVER, SUSAN SETTLER, LISA WESLEY, and KAREN STINE, *on behalf of themselves and all others similarly situated,*

      *Plaintiffs,*

v.

ROYO BREAD CO. INC.,

      *Defendant.*

————————————————————————— x

: Case No. _____
:
:
:
:
: **<u>CLASS ACTION COMPLAINT</u>**
:
: DEMAND FOR JURY TRIAL
:
:
:
:
:
:
:
:
:

Plaintiffs CHRIS SALLEY, PAULA PAGE TIERNEY, SUSAN FAVER, SUSAN SETTLER, LISA WESLEY, and KAREN STINE (the "Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following class action complaint (the "Action") against Defendant ROYO BREAD CO. INC. ("Royo" or the "Defendant") for violations of state statutes and common law doctrines seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees upon personal knowledge as to themselves and their own actions, and upon information and belief, including the investigation of their counsel as follows:

## **INTRODUCTION**

1. This is a class action on behalf of purchasers of various health conscious and keto-friendly bagels and other bread products which are produced by Royo which come in numerous different flavors and can be found online in either individual sales or subscriptions sales options, as well as at Whole Foods, on Amazon, and in hundreds of different grocery stores, convenience shops, or other retail locations (hereinafter, the "Products").[1]

---

[1] The Products include: Defendant's Everything Keto-Friendly Bagels Plain Keto-Friendly Bagels, Cinnamon Keto-Friendly Bagels, ROYO Starter Pack, 6-Pack Bundle, Variety Bagel Bundle, Cinnamon Rolls, Chocolate Rolls, 30-Calorie Bread, Keto-Friendly Burger Buns, Keto-Friendly Challah Rolls, and Super-Seed Keto-Friendly Bagel.

2. Plaintiffs and Class members, who have purchased these Products, bring this Action because of material representations which are false and misleading: the Products claim to contain fewer calories than they do, which is demonstrably false.

3. According to the United States Department of Agriculture's Food and Nutrition Information Center (FNIC), each gram of carbohydrates provides four calories per gram, each gram of protein provides four calories per gram, and each gram of fat provides nine calories per gram.[2] This set standard by the USDA proves that the caloric values in Royo's Products are not consistent with commonly accepted science for the Nutrition Facts that are found on each label.

4. For example, one of the Products, the Everything Keto-Friendly Bagels, claims to contain a total of 38 grams of carbohydrates, 1.5 grams of total fat, and 10 grams of protein which should add up to about 204 calories per serving; however, the Products claim to contain a mere 80 calories per serving in its Nutrition Facts. This can be seen in the image below.

---

These Products are substantially similar and the allegations as pled herein apply to each of these Products.

[2] *See*, National Agricultural Library Website https://www.nal.usda.gov/programs/fnic., (last accessed May 28, 2026).



**IMAGE 1:** Nutrition Facts for the "Everything Keto-Friendly Bagels"

5.	Defendant claims on its website that, compared to a regular bread products and bagels, its Products are significantly healthier and contain fewer calories, a detail that is material and highly pertinent to health-conscious consumers.

3

| | ROYO | Regular Bagel |
|---|---|---|
| Calories | 70-80 cal | 300 cal |
| Net Carbs | 5-6g | 55g |
| Protein | 10g | 6g |
| Gut Healthy | YES | NO |
| Price | $2 per bagel | $1.25 per bagel |

**IMAGE 2:** Chart Listed in Defendant's Website

6. Defendant's representations about calories are made in order to induce health-conscious consumers, like Plaintiffs, to purchase these Products. However, Defendant markets its Products in a way which is systematically misleading and false.

7. "Health-washing" is the instigation of a sale of a consumer product by making it appear healthier than it is and it has led consumers to buy products that either do not actually have any health benefits or are, in some cases, harmful. The instant case is a classic occurrence of health-washing. Here, Defendant uses false advertising and deceptive conduct which promises health-related benefits. The misrepresentations made on the Products are not only potentially harmful but

command a price premium consistent with these misrepresentations that Plaintiffs and Class members would not have paid had they known that Defendant's representations are false and misleading. The Products also intentionally contain no warning whatsoever about potential risks and the tendency to cause health risks – including for individuals who should or can consume only a specific amount of calories due to dietary restrictions, like obese persons, diabetics or patients who use GLP-1 medications for weight loss.

8. Against this backdrop, Plaintiffs and the Class members, on behalf of themselves and all others similarly situated, bring this Action seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees under state statutes and common law doctrines due to Defendant's intentional failure to ensure that the Products were distributed, produced, and sold in a manner consistent with advertising. As a result of the foregoing, Plaintiffs and Class members (defined below) were harmed by paying a price premium for the Products which they otherwise would not have paid due to the misrepresentations made about on packaging and in advertising or would not have purchased the Products at all.

<u>**JURISDICTION AND VENUE**</u>

9. *Subject Matter Jurisdiction.* This Court has subject matter jurisdiction over this Action pursuant to the Class Action Fairness Act of 2005 ("CAFA")

because there are (a) more than 100 members of the proposed classes, (b) more than 2/3rds of the members of the proposed classes have a different domicile or citizenship from a Defendant, and (c) the claims of the proposed class members exceed $5 million, exclusive of costs and fees.  Specifically, there are over 250,000 consumers who have purchased Defendant's Products through their website which far exceeds numerosity requirements.  Additionally, consumers bought these Products throughout the country, including in states which are diverse from New York – like Plaintiff Tierney, for example, who is domiciled in California.  Finally, damages to Class members far exceed $5 million due to statutory penalties and the price premiums paid for each Product.

10. *Personal Jurisdiction.*  This Court has personal jurisdiction over Defendant because: (1) Defendant Royo is headquartered and registered to do business in New York; and (2) Defendant conducts significant business in New York such that it purposefully availed itself of the privilege of doing business in New York.

11. *Venue.*  Venue is proper in this Court because Defendant transacts business within this District, Defendant is domiciled in this District, and a substantial part of the events giving rise to Plaintiffs' claims took place in this District.

*Plaintiff Chris Salley*

12. Plaintiff Salley is domiciled in New York and resides in Brooklyn, New York.

13. Plaintiff Salley purchased the Products for himself for personal use during the Class Period. Plaintiff Salley bought the Products because he relied on Defendant's representations including that the Products contained the caloric values found on the packaging. That representation was untrue because the Products contain a higher number of calories than advertised. The Products are sold at a price premium and are more expensive than other bread products.

14. Plaintiff Salley relied on these misrepresentations—and had he known the truth, he would not have purchased the Products or would have paid significantly less for the Products.

*Plaintiff Paula Page Tierney*

15. Plaintiff Tierney is domiciled in California and resides in Carlsbad, California.

16. Plaintiff Tierney purchased the Products for herself for personal use during the Class Period. Plaintiff Tierney bought the Products because she relied on Defendant's representations including that the Products contained the caloric

values found on the packaging. That representation was untrue because the Products contain a higher number of calories than advertised. The Products are sold at a price premium and are more expensive than other bread products.

17. Plaintiff Tierney relied on these misrepresentations—and had she known the truth, she would not have purchased the Products or would have paid significantly less for the Products.

***Plaintiff Susan Faver***

18. Plaintiff Faver is domiciled in New Jersey and resides in Clifton, New Jersey.

19. Plaintiff Faver purchased the Products for herself for personal use during the Class Period. Plaintiff Faver bought the Products because she relied on Defendant's representations including that the Products contained the caloric values found on the packaging. That representation was untrue because the Products contain a higher number of calories than advertised. The Products are sold at a price premium and are more expensive than other bread products.

20. Plaintiff Faver relied on these misrepresentations—and had she known the truth, she would not have purchased the Products or would have paid significantly less for the Products.

***Plaintiff Susan Settler***

21. Plaintiff Settler is domiciled in Illinois and resides in Galena, Illinois.

22. Plaintiff Settler purchased the Products for herself for personal use during the Class Period. Plaintiff Settler bought the Products because she relied on Defendant's representations including that the Products contained the caloric values found on the packaging. That representation was untrue because the Products contain a higher number of calories than advertised. The Products are sold at a price premium and are more expensive than other bread products.

23. Plaintiff Settler relied on these misrepresentations—and had she known the truth, she would not have purchased the Products or would have paid significantly less for the Products.

***Plaintiff Lisa Wesley***

24. Plaintiff Wesley is domiciled in Montana and resides in Livingston, Montana.

25. Plaintiff Wesley purchased the Products for herself for personal use during the Class Period. Plaintiff Wesley bought the Products because she relied on Defendant's representations including that the Products contained the caloric values found on the packaging. That representation was untrue because the Products contain a higher number of calories than advertised. The Products are sold at a price premium and are more expensive than other bread products.

26. Plaintiff Wesley relied on these misrepresentations—and had she known the truth, she would not have purchased the Products or would have paid significantly less for the Products.

***Plaintiff Karen Stine***

27. Plaintiff Stine is domiciled in Connecticut and resides in Ansonia, Connecticut.

28. Plaintiff Stine purchased the Products for herself for personal use during the Class Period. Plaintiff Stine bought the Products because she relied on Defendant's representations including that the Products contained the caloric values found on the packaging. That representation was untrue because the Products contain a higher number of calories than advertised. The Products are sold at a price premium and are more expensive than other bread products.

29. Plaintiff Stine relied on these misrepresentations—and had she known the truth, she would not have purchased the Products or would have paid significantly less for the Products.

**DEFENDANT**

***Defendant Royo Bread Co. Inc.***

30. Defendant Royo Bread Co. Inc. maintains its principal place of business in Brooklyn, New York.

31. Defendant markets, manufactures, distributes, sells, or otherwise is responsible for the placement of the Products at its stores both online and at retail.

## FACTUAL ALLEGATIONS

### *The Health-Friendly, Keto Bagels and Defendant's Misrepresentations*

32. The bread and bagel industry is a multi-billion-dollar industry which has a presence across the United States and the world as a whole. Generally, bread and bagels are designed to be a quick and convenient breakfast options, providing the necessary carbohydrates to work throughout the day.

33. In recent years, the ketogenic diet (also known as Keto), has risen in popularity. This diet consists of a very low-carbohydrate, high-fat eating plan designed to force one's body into a metabolic state called ketosis. This process can assist individuals interested in losing or maintaining weight. [3]

34. Due to this interest in Keto diets, bagels have been developed to be considered Keto-friendly, which typically consist of bagels with low calories and net carbohydrates, a characteristic consistent with other Keto foods.

35. Within this market, Royo operates a company with a line of low-carb baked goods, which includes breads, bagels, buns and other foods. Royo claims on

---

[3] *See* University of California Website, https://health.ucdavis.edu/blog/good-food/what-is-the-keto-diet-and-can-it-be-beneficial-for-you/2025/05 (last accessed May 28, 2026).

its website that eating these products are "*good for you*," given that they focus on creating high-fiber, low-carb meals.[4]

36. This, however, is not the case.

37. As previously alleged, Defendant represents that the Products contain fewer calories than they do. Carbohydrates provide four calories per gram, protein provides four calories per gram, and total fat provides nine calories per gram – which renders all of the Defendant's advertising false regarding caloric content.

38. This is material because the Defendant advertises that, compared to regular bread and bagels, the Products are significantly healthier and lower in calories, which are especially important to health-conscious consumers and those following a Keto diet.

39. The representations that are made on the Products' packaging are critical because consumers, like Plaintiffs and Class members, rely on them when they make their purchases. This is especially the case when a consumer chooses to buy specific bread and bagels that are associated with health-related purposes. Further, consumers, like Plaintiffs and Class members, who buy the Products do so because they are looking for not just a healthy option, but one that specifically is even healthier than the average standard bread and bagels.

---

[4] *See* Defendant's Website, https://eatroyo.com/pages/about-us (last accessed May 28, 2026).

### *Royo Misleads Consumers*

40. Defendant's representations as discussed herein are misleading to consumers in a material way.

41. Defendant boldly and prominently advertises caloric content on its packaging on every Product in order to drive sales and persuade consumers to rely on the caloric representations, as Plaintiffs and Class members did.



**IMAGE 3:** Front Label for the "Everything Keto-Friendly Bagels"

42.  The problem is that carbohydrates, total fat, and protein content are all regulated by the USDA with respect to caloric values; and, unlike the rest of its industry, Defendant does not subscribe to these values, as can be seen in the sampling of Products below:

**<u>Defendant's Everything Keto-Friendly Bagels</u>**

Advertised Caloric Value Per Serving: 80

Actual Caloric Value Per Serving (per USDA guidelines): ~204



# **Plain Keto-Friendly Bagels**

Advertised Caloric Value Per Serving: 70

Actual Caloric Value Per Serving (per USDA guidelines): 193



# **Cinnamon Raisin Keto-Friendly Bagels**

Advertised Caloric Value Per Serving: 70

Actual Caloric Value Per Serving (per USDA guidelines): 193



# **Cinnamon Rolls**

Advertised Caloric Value Per Serving: 120

Actual Caloric Value Per Serving (per USDA guidelines): 199



## **Chocolate Rolls**

Advertised Caloric Value Per Serving: 120

Actual Caloric Value Per Serving (per USDA guidelines): 199



# **30-Calorie Bread**

Advertised Caloric Value Per Serving: 30

Actual Caloric Value Per Serving (per USDA guidelines): 64



## **Keto-Friendly Burger Buns**

Advertised Caloric Value Per Serving: 90

Actual Caloric Value Per Serving (per USDA guidelines): 178.5



# **Keto-Friendly Challah Rolls**

Advertised Caloric Value Per Serving: 90

Actual Caloric Value Per Serving (per USDA guidelines): 175.5



43. As a result, consumers are misled into believing that they are consuming fewer calories than advertised for a healthy product. But consumers are paying a price premium on health for a bagel or bread product which does not meet the standard it claims to possess.

**CONSUMER HARM**

44. Due to the significant number of sales of the Products, there are likely tens of thousands of consumers who have purchased and are continuing to purchase the Products distributed, marketed, produced, and sold by the Defendant.

45. In fact, Plaintiffs and Class members could have been better off calorically by consuming normal bread products: an average bagel only has 250-300 calories and an average slice of bread has 70-90 calories – which are very similar to the caloric ranges that Defendant should have used according to the USDA.

46. Unfortunately, consumers, like Plaintiffs and Class members, are misled into buying the Products and even to pay a premium for these items. Furthermore, the deleterious health impacts and risks consuming the Products is a material fact omitted on packaging which further harms reasonable consumers, including Plaintiffs and Class members.

47. As such, Plaintiffs and Class members were harmed in the form of the monies they paid for the Products which they would not have otherwise paid had they known the truth.

## CLASS ACTION ALLEGATIONS

48. Plaintiffs bring this Action individually and on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23, seeking certification of the proposed classes (collectively, the "Class"):

**Nationwide Class**: All persons within the United States who purchased the Products from the beginning of any applicable statute of limitations period through the date of judgment or until the conduct alleged ceases ("Class Period").

49. Additionally, Plaintiffs bring this Action on behalf of the following subclasses:

**California State Sub-Class**: All persons within the State of California who purchased the Products from the beginning of any applicable statute of limitations period through the date of judgment or until the conduct alleged ceases ("Class Period").

**Illinois State Sub-Class**: All persons within the State of Illinois who purchased the Products from the beginning of any applicable statute of limitations period through the date of judgment or until the conduct alleged ceases ("Class Period").

**New York State Sub-Class**: All persons within the State of New York who purchased the Products from the beginning of any applicable statute of limitations period through the date of judgment or until the conduct alleged ceases ("Class Period").

**New Jersey State Sub-Class**: All persons within the State of New Jersey who purchased the Products from the beginning of any

applicable statute of limitations period through the date of judgment or until the conduct alleged ceases ("Class Period").

**Montana State Sub-Class**: All persons within the State of Montana who purchased the Products from the beginning of any applicable statute of limitations period through the date of judgment or until the conduct alleged ceases ("Class Period").

**Connecticut State Sub-Class**: All persons within the State of Connecticut who purchased the Products from the beginning of any applicable statute of limitations period through the date of judgment or until the conduct alleged ceases ("Class Period").

50. Excluded from the proposed Class are Defendant and any such entities in which the Defendant has a controlling interest, the Defendant's agents, employees and legal representatives, any judge or judicial officer to whom this matter is assigned and any member of such judge or judicial officers' staff and immediate family, as well as all resellers of the Products.

51. *Numerosity.* The members of the Class are so numerous that joinder would be inefficient and impracticable. Based upon Defendant's annual sales statistics, there are at least tens of thousands of Class members across the country.

52. *Commonality.* There are common questions of law and fact relevant to the Class, and these questions predominate over any questions affecting individual Class members. These common questions of law and fact include, without limitation:

      i. Whether Defendant violated state and common law statutes and doctrines;

24

ii. Whether Defendant engaged in the conduct as alleged;

iii. Whether Defendant breached express warranties;

iv. Whether Defendant failed to warn of the risks that followed the foreseeable use of its Products;

v. Whether Defendant was unjustly enriched;

vi. Whether Plaintiffs were harmed;

vii. The measure of damages to Plaintiffs and Class members; and,

viii. Whether Plaintiffs are entitled to declaratory and injunctive relief.

53. *Typicality*. Plaintiffs' claims are typical of those of other Class members because Plaintiffs, like every other Class member, were harmed by way of the conduct as alleged herein. Plaintiffs, like all other Class members, were injured by Defendant's uniform conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class members, such that there are no defenses unique to Plaintiffs. The claims of Plaintiffs and those of the other Class members arise from the same operative facts and are based on the same legal theories.

54. *Adequacy of Representation*. Plaintiffs will fairly and adequately represent and protect the interests of the Class members in that they have no disabling or disqualifying conflicts of interest that would be antagonistic to those of

the other members of the Class. The damages and infringement of rights that Plaintiffs suffered are typical of other Class members, and Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class. Plaintiffs have retained counsel experienced in consumer protection class action litigation, and Plaintiffs intend to prosecute their action vigorously.

55. ***Superiority of Class Action***. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of numerous individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the Class common issues to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. In addition, without a class action, it is likely that many members of the Class will remain unaware of the claims they may possess.

56. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws and the ascertainable identities of Class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

57. Adequate notice can be given to Class members directly using information maintained in the parties' records.

58. ***Predominance***. The issues in this action are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

59. This proposed class action does not present any unique management difficulties.

**FIRST through FIFTH CAUSES OF ACTION**

**VIOLATIONS OF CONSUMER PROTECTION LAWS**

NEW YORK'S CONSUMER PROTECTION LAW
N.Y. GEN. BUS. LAW § 349 ("GBL § 349")
(ON BEHALF OF THE NATIONWIDE CLASS AND NEW YORK
SUBLCASS)

CALIFORNIA CONSUMER LEGAL REMEDIES ACT
CAL. CIV. CODE §§ 1750, *et seq.*
("CLRA")
(ON BEHALF OF THE CALIFORNIA SUBCLASS)

ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT ("ICFA")
815 ILCS 505/1 *et seq.*
(ON BEHALF OF THE ILLINOIS SUBCLASS)

NEW JERSEY CONSUMER FRAUD ACT ("NJCFA")
N.J. Stat. § 56:8-1, *et seq.*
(ON BEHALF OF THE NEW JERSEY SUBCLASS)

*AND ALL SUBSTANTIALLY SIMILAR STATUTES*

60.     Plaintiffs repeat the allegations in Paragraphs 1-59 as if fully set forth with the same force herein.

61.     For purposes of GBL § 349, the CLRA, ICFA, NJCFA, and UTPCPL (the "UDAP Statutes"), Defendant is considered a business, and Plaintiffs (as well as Class members) are considered consumers.

62.     The UDAP Statutes prohibit deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.

63. Defendant committed deceptive acts or practices by employing false, misleading, and deceptive representations and/or omissions about the presence (or risk of a presence) the health and efficacy of the Products.

64. Information as to the content in each of their Products was in the exclusive control of Defendant. Plaintiffs could not possibly have known that the representations made on packaging as aforementioned were not only false, but misleading.

65. Because Plaintiffs bought these Products numerous times, Plaintiffs have standing to pursue this claim because they each have suffered an economic injury due to lost money or property as a result of Defendant's acts or practices. When Plaintiffs purchased the Products, they relied on false, misleading and deceptive representations that the Products were consistent with advertising on packaging. Plaintiffs spent money on the transaction that they otherwise would not have spent had they known the truth about Defendant's Products.

66. Defendant's conduct was deceptive in a materially misleading way because it violates consumer's reasonable expectations. Defendant knew consumers would purchase its Products and/or pay more for them under the false, but reasonable, belief that they contained fewer calories.

67. Defendant knew that this health information about its Products, which are specifically marketed toward health-conscious consumers, remains material to

these types of consumers. As a result of its deceptive acts and practices, Defendant sold millions of units of the Products to unsuspecting consumers nationwide, as well as to thousands of unsuspecting consumers nationwide, and in New York, New Jersey, Illinois, Montana, Connecticut, and California.

68. As a direct and proximate result of Defendant's false, misleading and deceptive representations and/or omissions, Plaintiffs and Class members were injured in that they: (1) overpaid for the Products that were not what Defendant represented, (2) were deprived of the benefit of the bargain because these Products were different than what was advertised and marketed, and (3) were deprived of the benefit of their bargain because the Products they purchased had less value than if Defendant had adequately disclosed the risks of consumption and the correlation to health problems as stated above.

69. On behalf of themselves and Class members, Plaintiffs seek to enjoin Defendant's unlawful acts and practices—as well as to have warnings added to the packaging of the Products.

70. Additionally, on behalf of themselves and Class members, Plaintiffs also seek to recover their actual damages or statutory penalties, whichever is greater, and three times their actual damages, as well as reasonable attorneys' fees.

71.     With respect to the Second Cause of Action, Plaintiffs will amend their Complaint to give notice regarding the applicability of damages under the CLRA after a 30-day window to cure.

**SIXTH and SEVENTH CAUSES OF ACTION**

**VIOLATIONS OF FALSE ADVERTISING LAWS**

VIOLATIONS OF NEW YORK'S FALSE ADVERTISING LAW
N.Y. GEN. BUS. LAW § 350 ("GBL § 350")
(ON BEHALF OF THE NATIONWIDE CLASS AND NEW YORK
SUBCLASS)

VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW
CAL. BUS. AND PROF. CODE § 17500 ("FAL")
(ON BEHALF OF THE CALIFORNIA SUBCLASS)

*AND ALL SUBSTANTIALLY SIMILAR STATE STATUTES*

72.     Plaintiffs repeat the allegations in Paragraphs 1-59 as if fully set forth with the same force herein.

73.     Defendant engaged in a systematic campaign of false and misleading advertising and marketing with regard to the health of its Products to deceive consumers into believing that the Products contained fewer calories, which was untrue.

74.     Because Plaintiffs bought these Products numerous times, Plaintiffs have standing to pursue this claim because they each have suffered an economic injury due to lost money or property as a result of Defendant's acts or practices. When Plaintiffs purchased the Products, they each relied on false, misleading and

deceptive representations, as well as omissions to the contrary, which led them to believe that the Products as advertised on packaging. Plaintiffs spent money in the transaction that they otherwise would not have spent had they known the truth about Defendant's Products.

75. Defendant's conduct was deceptive in a materially misleading way because it violates consumer's reasonable expectations. Defendant knew consumers would purchase its Products and/or pay more for them under the false, but reasonable, belief that they were healthy and consistent with advertising on packaging.

76. Defendant knew that this health information about its Products, which are specifically marketed toward health-conscious purchasers, is material to consumers. As a result of its false advertising, Defendant sold millions of units of the Products to unsuspecting consumers nationwide.

77. As a direct and proximate result of Defendant's false, misleading and deceptive representations and/or omissions, Plaintiffs and Class members were injured in that they: (1) overpaid for the Products that were not what Defendant represented, (2) were deprived of the benefit of the bargain because these Products were different than what was advertised and marketed, and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant had adequately disclosed the truth about them.

78. On behalf of themselves and Class members, Plaintiffs seek to enjoin Defendant's unlawful acts and practices. On behalf of themselves and Class members, Plaintiffs also seek to recover their actual damages or applicable statutory penalties, whichever is greater, and three times their actual damages, as well as reasonable attorneys' fees.

## EIGHTH CAUSE OF ACTION

### UNJUST ENRICHMENT

79. Plaintiffs reallege the allegations of Paragraphs 1-59 as if fully set forth herein.

80. Defendant received benefits from Plaintiffs and Class members and unjustly retained those benefits at their expense.

81. Defendant received benefits from Plaintiffs and Class members in the form of the Plaintiffs and Class members' compensation they paid for the Products which were purchased indirectly through other third parties.

82. These purchases provided the Defendant with economic, intangible, and other benefits, including money.

83. Had Plaintiffs and Class members known of Defendant's misconduct, they would not have paid for the Products or would have paid less for the Products.

84. Defendant unjustly retained these benefits at the expense of Plaintiffs and Class members because Defendant's conduct damaged Plaintiffs and Class

members, all without providing any commensurate compensation to Plaintiffs and Class members.

85. The benefits that Defendant derived from Plaintiffs and Class members rightly belong to Plaintiffs and Class members. It would be inequitable for Defendant to retain any of the profit or other benefits it derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Action.

86. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

## <u>REQUEST FOR RELIEF</u>

87. Plaintiffs, on their own behalf and on behalf of the Class and the Sub-Classes, requests the following relief:

a. An order certifying the Class and the Sub-Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class and Sub-Class Representatives and their attorney as Class Counsel;

b. A declaration that Defendant is financially responsible for notifying Class and Sub-Class members of the pendency of this suit;

c. An order declaring that Defendant's conduct violates the consumer protection statutes cited;

d. Actual damages;

e. Statutory damages;

f. An order providing appropriate equitable relief in the form of an injunction against Defendant's unlawful and deceptive acts and practices, and requiring proper, complete, and accurate representation and labeling of the Products;

g. Pre- and post- judgment interest on all amounts awarded;

h. Other injunctive relief as the Court may deem appropriate; and

i. An order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMAND

88. Plaintiffs hereby demand a trial by jury.

DATED: May 28, 2026

YAGMAN PLLC

/s/ *Blake Hunter Yagman*

Blake Hunter Yagman
Allen Neumark (PHV Forthcoming)
FOREST HILLS TOWER
118-35 Queens Boulevard, Suite 444
Forest Hills, New York 11375
*blake.yagman@yagmanpllc.com*
*allen.neumark@yagmanpllc.com*
Tel: (929) 709-1493

LAUKAITIS LAW LLC
Kevin Laukaitis
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, Puerto Rico 00907
*klaukaitis@laukaitislaw.com*
Tel: (215) 599-6072

*Attorneys for Plaintiffs* CHRIS SALLEY, PAULA PAGE TIERNEY, SUSAN FAVER, SUSAN SETTLER, LISA WESLEY, KAREN STINE *and the Proposed Classes*